We move to the final case this morning. Green v. Saul. Good morning. May it please the court, counsel Joseph Sellers on behalf of the claimant, Holly Green. Ms. Green seeks reversal of an administrative law judge decision erroneously denying her claim for Social Security disability benefits. That decision was not supported by substantial evidence because it was based on an improper credibility finding, an incomplete residual functional capacity assessment, and an improper rejection of an examining psychologist's opinion. The ALJ found Ms. Green's allegations not entirely credible because, in his mind, her reports of her activities showed that she was functioning at a higher level than she reported because the record, in his mind, did not contain diagnostic assessments or the type of treatment that he believed was supportive of a finding of disability and because the objective medical evidence allegedly did not support the severity of limitations that she alleged. But none of these reasons support the ALJ's ultimate conclusion. With respect to Ms. Green's activities, it's not clear why or how the ALJ found those activities supportive of his reasoning because he failed to address the evidence that contradicted his conclusion and it's not even clear what that conclusion was because he relies on her reports to repudiate her reports, which is logically inconsistent. But in doing so, he failed to address the evidence that contradicted that opaque reasoning. And he also failed to address evidence that contradicted his reasoning regarding Ms. Green's treatment and her response to that treatment. While it is true that Ms. Green reported at times some improvement with medication, injections in her knees, nerve blocks in her cervical spine, and arthroscopic surgery to her knee, the ALJ failed to address evidence or even consider evidence that showed that that improvement was neither consistent nor decisive. That is error. The ALJ also failed to address evidence and consider the extent of Ms. Green's treatment and how the extent of that treatment supported her allegations. She went through injections, medications, which include a narcotic pain medication, nerve pain medication, muscle relaxants, Prozac. She had sleep apnea. She took Ambien. She had a sleep mask. The ALJ expressed no finding regarding how that extent of treatment, which did not provide consistent relief, supported his reasoning. That too is error. The ALJ also failed to consider all of the objective medical evidence, but found that the little that he considered undermined her allegations. Ms. Green was diagnosed with sleep apnea and insomnia. Nowhere in the ALJ's consideration of her credibility did he address the effect of those impairments on her limitations. That is error. Oddly, despite finding that her cervical spine impairment and the result in headaches were severe impairments, the ALJ's discussion of the objective evidence is silent on those impairments. He gives no insight into how those impairments affected his reasoning. Let me ask you a question on that. I think you're on to the point that I wanted to talk about a little bit, and that is, maybe the easier way to ask it is, can you walk me through what you understand, just briefly, the medical evidence to be, including after the hearing, with respect to her neck issues, both the pain and the limitation of movement? After the hearing or at the hearing? There was some evidence that was there some evidence that was submitted after the hearing? Yeah. I believe it was evidence of nerve blocks to her cervical spine. There was also an MRI or something. And she also had a cervical spine MRI, which showed degenerative disc disease in her cervical spine, which related back to prior diagnoses of migraine headaches and radiculopathy. So what did that evidence show with respect to limitations of movement? It was a medically determinable impairment that could reasonably be expected to cause limitations of movement to which she testified in sworn testimony at the hearing, where she said that it hurts for her to turn her neck side to side, look up, look down, and limits her ability to read or look at the computer for more than 15 minutes at a time. So if you meet the burden that the claimant has to produce evidence of a medically determinable impairment that could reasonably be expected to cause the claimant to provide evidence of that alleged limitation, the range of motion restrictions, the pain, and the inability to read or look at a computer for extended periods, the claimant has met the burden of proof established by the commission. And it's the ALJ's duty then to muster substantial evidence to reject those allegations. But in this case, the ALJ didn't address those allegations, didn't address that objective evidence. So it's not necessarily that she was required to show evidence of range of motion limitations explicitly. She only has to produce evidence of the underlying condition, plus evidence of limitations, and she has done that, and the ALJ failed to address it. And that's the error with respect to her cervical spine issues. When you say cervical spine, you mean the neck issues? Yes, sir. Yes. The only thing I could see is that she said she doesn't, in the RFC part of this, is she doesn't have a driver's license because she can't move her head to the right, and she's afraid to drive if she can't move her head to the right. Correct. But if you're willing to accept that fact, the ALJ gave no reason why he was not also willing to accept the limitation in a non-driving situation. And the vocational expert at the hearing testified that if the employee has to keep her head stationary, as in not being able to turn it side to side, they are unemployable, as you said earlier today. But it's not just the cervical spine issue. It's the sleep apnea. It's the fatigue during the day. It's the need to nap during the day. It's the inability to stand or sit for extended periods of time. And the critical issue with the evidence that was submitted after the hearing, but also after the state agency had a chance to review the record at the initial and reconsideration level, is that the ALJ failed to submit any of that objective evidence to a medical expert for an updated medical opinion. The ALJ, therefore, relied solely on his own lay impression of that objective evidence, of that potentially decisive new objective evidence. And that is error, as this Court has held repeatedly. The ALJ's mental RFC is also flawed because he improperly rejected the examining psychologist opinion, that of Dr. Bain. The ALJ only cited two reasons for doing so, the objective findings of an internist and some other findings of normal thought, content, and judgment. But as we showed in our brief, those reasonings were flawed both legally and logically. And if there are no further questions, I reserve the time. Thank you, counsel. Thank you. Mr. Montenegro. Good morning. May it please the Court. My name is Leo Montenegro, appearing for the defendant, Appellee, the Commissioner of Social Security. Your Honor, in this case, the ALJ was faced with conflicting and ambiguous evidence, as is often the case, and was tasked with resolving those ambiguities and conflicts. So, excuse me, we submit that substantial evidence supports the ALJ's findings and decision, and that the ALJ's decision should be upheld. As to the ALJ's credibility finding, the ALJ found that the claimant's description of her symptoms could not be taken at face value because of inconsistent and ambiguous statements. The ALJ, in his decision, pointed out that the claimant had complained of left back, 15 bad days a month, and on good days, with medication, she could move and do things around the house. And he pointed out that despite the complaints of migraine headache pain, she wasn't taking medications for migraines. This is at pages 9, 11, 14, and 16 of the ALJ's decision. The ALJ also compared these allegations to claimant's activities of daily living, wherein she testified that she could watch TV, and the point of that is she could maintain concentration long enough to watch, understand, follow 30-minute television programs, that she was also able to take care of, despite her claim of pain for 15 days out of the month, such that she could hardly move, that she could still take care of her own personal needs, that is dressing and bathing, that she could read, use the household things that were assisted by her husband and her children. I'm sorry, Your Honor? Household work. She said that she did some of it with help, and she also said that her husband and children helped. And in fact, as to everything I was recounting, I think she later said that she did that, she did those activities rarely or with the assistance of others. As to the claimant's credibility, the ALJ also discussed treatment and response to treatment. I have to point out, this wasn't alleged before the district court, that is this topic of treatment and response to treatment, but the ALJ did discuss it. The ALJ expressly mentioned treatment as a factor, citing good results from left knee surgery and the fact that the claimant's fibromyalgia was described consistently as improved with medications and was well controlled. That's at pages 11 to 14 of the ALJ's decision, sorry, administrative record. Mr. Montenegro, what do you make of the neck, the limited neck movement issue that I was asking your adversary about? Because the reason I've focused on that is because the V.E. testified here, if I have this right, that to do the jobs that are listed there, the person needs to be able to hold their neck both in a position and then move their neck, which makes complete sense to me. But then you've got medical evidence here, do you not, that there's quite limited neck movement as a result of the medical problems that Mr. Sellers was going through. And what I can't figure out is where that's accounted for in the analysis. I think there are two elements to that, your honor. First, the claimant has alleged fibromyalgia, which is a diffuse kind of nonspecific joint pain that's throughout the body, and the ALJ considered the neck pain as part of fibromyalgia. The ALJ, I believe, described it as neck and shoulder pain as part of fibromyalgia. What about neck movement, inability to move your neck around? I don't think the ALJ didn't talk about the inability to move the neck. It's just that the ALJ talked about it more generally, I would say, as an element of fibromyalgia, which is joint pain all over. And the ALJ, I believe, said that the fibromyalgia was manifested mostly in the lower back and the neck and shoulders. And then later in the medical evidence, the claimant complained of specific neck pain. And I believe it was Dr. Pai, the doctor who ultimately ended up prescribing the MRI and giving nerve blocks, who stated that the MRI revealed nothing but degenerative changes, that is nothing more specific than degenerative changes in the neck, cervical spine. Never said anything about functional limitations, said that nerve blocks were in order, and in the end didn't identify any specific problems. When he talked about degenerative changes, I don't remember exactly what he said, but he did mention that there wasn't something more specific than that. So I don't know that that really separates the neck problems from fibromyalgia. There were no medical opinions of neck problems of the sort the claimant is alleging. And in fact, the neck problems that she complained of, as treated by Dr. Pai, were treated with nerve blocks alone. And if you view them as a component of fibromyalgia, the medical evidence documents that the fibromyalgia was improved and well controlled, although I have to say that I'm not saying that she was cured. I don't think the evidence supports that she was cured of any of her complaints, any of her medical problems, that she did continue, despite treatment for her fibromyalgia, for her knee, and for later, if you want to count it separately, for her neck, that she still had significant limitations as a result of those. The doctors commented on these, but no one said anything, none of the physicians said anything about any neck restrictions, and to the extent that the claimant was claiming neck restrictions separately, the ALJ didn't address those separately as part of his credibility finding, but the ALJ did address claimant's pain overall in that regard. So going back to the ALJ's credibility finding, as I said, the ALJ looked at her complaints, looked at her activities of daily living, the treatment and response to treatment, and the objective medical evidence as well, the ALJ pointing out that despite her complaints of pain and difficulty walking and standing, that she had a normal stance and stride, that his other physicians found her to have a normal stance and stride on physical examination, a normal joint movement, no swelling, normal reflexes, and muscle tone. On top of that, the physicians and psychologists on whom the ALJ relied said nothing about, well, did not opine as to functional limitations as extreme as alleged by the claimant. So as with respect to the ALJ's credibility finding, I think the ALJ did account overall for claimant's complaints, he identified those complaints and he gave reasons for why he did not find them to be completely reliable. As to the ALJ's consideration of psychologist Dr. Bone's opinion, Dr. Bone was an examining psychologist, a consultative examiner, who examined claimant and gave an opinion as to claimant's functional limitations, mental functional limitations. His opinion in the end was that, among other things, claimant would understand instructions given to her, but because of her mental problems, she would not remember them in order to perform them, and that was soundly rejected by the ALJ and by the doctors on whom the ALJ relied. So the ALJ, as to claimant's mental functional limitations, relied on the opinions of two state agency psychologists, Drs. Loveco and Gant, and in their opinions, they pointed out why Dr. Bone's opinion was wrong, or at least unsupported. Their take on it was that Dr. Bone's opinion of mental functional limitations wasn't supported by his examination. On top of that, on top of the ALJ's reliance on these two state agency psychologists, the ALJ also pointed out other reports in the record from Dr. Kamineni, who opined after examining that she had normal concentration and normal memory, and how this contradicted Dr. Bone's opinion of memory so bad that she wouldn't be able to remember the job instructions that she was given. So as to the mental functional limitations, which my opposing counsel has referred to in the treatment of Dr. Bone's opinion, this was a matter of conflicting evidence. The ALJ resolved that conflict. The ALJ explained how he resolved that conflict, and the evidence explains, and the ALJ explained why Dr. Bone's opinion wasn't supported or wasn't reliable. The final issue raised by Klamath has to do with her allegations of disabling fatigue and neck pain. We discussed neck pain earlier, and how the ALJ addressed that, both separately as neck lump, addressed it as neck pain independently in fibromyalgia, and considered it all in the functional limitations, the RFC finding, as fibromyalgia, that is as part of the all-over pain she claimed to experience. As to fatigue and sleep apnea, the record shows that she complained of fatigue, that she had a sleep study test and was diagnosed with sleep apnea, that she was treated for that both with medication and a mask that she wore at night apparently, and nothing further. That is, there were no functional limitations associated with that. There was no change in the treatment in the record. There was no reason to believe that the treatment prescribed didn't work. So overall, I submit that the ALJ's decision was supported by substantial evidence, that the ALJ adequately explained the reasons for his finding. And if there are no further questions, I'll rest in my brief. Thank you, counsel. Thank you. Thank you. The evidence that the sleep apnea treatment wasn't working was Ms. Green's sworn testimony that she continued to suffer from daytime fatigue and needed naps every day, despite sleep mask and Ambien. The ALJ, of course, ignored that evidence, as he ignored any evidence that contradicted his reasoning with regard to it. Mr. Sellers, I have to say, listening to your argument, I get the impression this is the worst ALJ decision in history, with multiple reversible errors. There are. At least four from our brief, any one of which would warrant remand. If the court finds that the ALJ's treatment of Dr. Bain's opinion was proper, or at least not reversible error, his credibility errors warrant remand, and his incomplete RFC also warrants remand. It may not be the worst, but it certainly isn't the best, and it certainly is reversible because he committed errors of law that adversely affected Ms. Green's claim. The government has advanced no harmless error argument. Almost ironically, the government did not raise a waiver argument regarding our treatment argument in its brief, so it is waive that argument, and I just want to make three quick points about what the government has argued. The ALJ's alleged reliance on fibromyalgia to address the neck pain is exactly why ALJs should not rely on their own lay impressions of objective evidence to deny a claimant's allegations. The ALJ nor the government cites any authority from within the record or without the consideration of fibromyalgia can also address the functional issues from an underlying cervical spine or neck problem. There is no evidence in the record that that kind of analysis is sufficient, regardless of the government's... Did any doctor impose functional limitations because of the neck issues? Not explicitly, no, Your Honor, but that is not a requirement in the regulations or the case law. As I was mentioning earlier, the only burden a claimant has to satisfy is to produce evidence of an underlying medically determinable impairment, like degenerative disc disease, that could reasonably be expected to cause the claimant's alleged symptoms and allegations, like range of motion problems, like neck pain. Ms. Green has satisfied that burden. The ALJ failed to muster substantial evidence to reject those allegations. Thank you, counsel. Thank you. Thanks to both counsel, and the case will be taken under advisement, and the court is in recess.